**FOSTER MEDICAL CORPORATION EMPLOYEES' PENSION PLAN, et al., Plaintiffs, Appellants,**

**v.**

**HEALTHCO, INC. and the Amended and Restated Healthco Employees' Pension Plan, Defendants, Appellees.**

**No. 84–1716.**

United States Court of Appeals, First Circuit.

Argued Dec. 3, 1984.

Decided Jan. 25, 1985.

David Wawro, New York City, with whom Haythe & Curley, New York City, Robert S. Frank, Jr., and Choate, Hall & Stewart, Boston, Mass., were on brief, for appellants.

Joel Lewin with whom Peter M. Zuk and Snyder, Tepper & Comen, Boston, Mass., were on brief, for appellees.

Before COFFIN and BREYER, Circuit Judges, and MALETZ,* Senior Judge.

MALETZ, Senior Judge.

Plaintiffs appeal from the district court's entry of summary judgment for defendants in a contract and ERISA action. For the reasons that follow, the judgment below is affirmed in part and reversed and remanded in part.

## I. *Background*

The action arises from a so-called "spin-off" transaction, in which defendant Healthco, Inc. (Healthco) sold the assets and liabilities of its Medical Division to Foster Medical Distribution Corporation (Foster)—which is not a party to this action—for approximately $28 million. The sale agreement, which is dated December 31, 1980, provided (1) that employees of Healthco's Medical Division would become employees of Foster and (2) that defendants Healthco and its employees' pension plan (Healthco Plan) would transfer pension assets and liabilities applicable to these employees to plaintiff Foster Medical Corporation Employees' Pension Plan (Foster Plan). Plaintiffs-appellants—the Foster Plan and its Administrative Committee—contend that the pension funds transferred by defendants were insufficient to fulfill their contractual and statutory obligations.

More specifically, in September 1981, defendants-appellees, Healthco and the Healthco Plan, transferred funds in the amount of $1,132,642 to the Foster Plan. As of December 31, 1980, the Healthco Plan's assets were $6,330,076, while its liabilities were only $5,073,846, leaving a surplus, or "overfunding," of $1,256,230. Plaintiffs' primary claim is that they were entitled to a *pro rata* share of this surplus, amounting to approximately $260,000. This entitlement, they maintain, arises under (1) the December 31, 1980 agreement and (2) the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1982). In addition, plaintiffs claim that defendants are obligated to pay them the sum of $37,104 pursuant to a provision of the sale agreement known as the "full funding warranty," which required Healthco to "fully fund the Healthco Plan Benefits of all the [Medical] Division's employees."

The district court—which had before it plaintiffs' motion for partial summary judgment on the issue of liability and defendants' motion for summary judgment on all issues—held, in an unpublished memorandum and order, that the Healthco defendants had fully satisfied their obligations and therefore entered summary judgment in their favor. This appeal by plaintiffs followed.

The focus of the parties' dispute is section X of the December 1980 agreement, which deals with transfer of pension funds. It provides:

Employees of the Division are covered by the "Amended and Restated Healthco Employee's Pension Plan" (the "Healthco Plan"). The Healthco Plan also covers other employees of the Seller and its

* Of the United States Court of International Trade, sitting by designation.

subsidiaries. The Seller agrees that, at the request of the Purchaser, it will cooperate in transferring *the portion of the assets and liabilities of the Healthco Plan which are attributable to employees of the Division* to a new retirement plan (or retirement plans) established by the Purchaser; provided, however, that the Seller shall not be so required to transfer assets or liabilities of the Healthco Plan to the extent prohibited by the Employee Retirement Income Security Act of 1974 or the Healthco Plan (notwithstanding any amendments thereto designed to carry out the intent of this Section X). The Purchaser agrees that each employee of the Division as to whom assets are transferred shall be entitled to receive a benefit (referred to as his "Healthco Plan Benefit") under the new plan in respect of his service with the Seller which is at least equal to the benefit he would have been entitled to receive under the Healthco Plan in respect of such service, and *the Seller represents and warrants that the assets so transferred will* (under the actuarial assumptions used by the Healthco Plan on December 31, 1979) *fully fund the Healthco Plan Benefits of all the Division's employees.* (Emphasis added.)

## II. *Contentions of the Parties*

Plaintiffs-appellants contend that the district court erred (1) in failing to consider whether Healthco satisfied section X's warranty that the assets transferred would "fully fund the Healthco Plan Benefits" of the employees; (2) in holding that no part of the Healthco Plan's surplus was "attributable to" Medical Division employees; and (3) in failing to consider whether Healthco's refusal to transfer any portion of the Healthco Plan's surplus violated fiduciary duties under ERISA. In particular, plaintiffs argue (1) that the assets transferred fell $37,104 short of satisfying the full funding warranty; (2) that section X, in using the phrase "attributable to," required defendants to transfer a *pro rata* share of the Healthco Plan's surplus, in the amount of approximately $260,000, over

and above the amount necessary to satisfy the full funding warranty; and (3) that Healthco's refusal to transfer such a *pro rata* share also violated a fiduciary duty.

Defendants respond (1) that plaintiffs' allegation of a $37,104 shortfall was not timely asserted; (2) that "attributable to" means no more than the amount necessary to fully fund the defined benefits; and (3) that Healthco violated no fiduciary duty.

## III. *The Full Funding Warranty*

The district court's memorandum did not specifically address plaintiffs' contention that the sum transferred by Healthco was $37,104 short of satisfying section X's full funding warranty. Indeed, the court assumed that plaintiffs were satisfied that the $1,132,642 transferred *was* sufficient "to 'fully fund' liabilities." Plaintiffs argue, to the contrary, that defendants breached the full funding warranty and that the court failed to consider the issue.

Defendants point out that the full funding claim was raised for the first time when plaintiffs filed an opposition to defendants' motion for summary judgment. In support of their contention that the complaint, which was dated March 11, 1983, failed to raise the full funding issue, defendants point to a June 17, 1983 letter to Healthco, in which Foster demanded payment of $37,104 and indicated a willingness to "include the amount in our legal procedures." According to Healthco, plaintiffs' omission in the complaint of a claim for $37,104, coupled with their failure to amend the complaint after the June 17 letter, indicates that the full funding claim was never raised and barred the district court from considering the issue.

For their part, plaintiffs emphasize that the complaint alleged that defendants breached section X of the agreement and their fiduciary duties under ERISA by failing to transfer all assets of the Healthco Plan "attributable to" employees of the Medical Division. Although plaintiffs read more into the words "attributable to" than the district court did, they argue that the district court's understanding of the phrase

proves, *a fortiori,* that the complaint raised the full funding claim. In this respect, while plaintiffs argued to the district court that the phrase "attributable to" indicated an entitlement to a *pro rata* share of the plan's surplus, the court read the phrase more narrowly and found that the only issue raised by the phrase was whether pension liabilities were fully funded. Without abandoning their argument that "attributable to" has significance over and above the full funding issue, plaintiffs accept the district court's conclusion that, at a minimum, the phrase mandates compliance with the full funding warranty. Thus, in plaintiffs' view, their request that the district court enforce the mandate of "attributable to" necessarily encompassed a request that the court enforce the full funding warranty.

 It is true that plaintiffs could have articulated their full funding claim more clearly. Nevertheless, we conclude that the issue is raised implicitly in the complaint and may be gleaned from a reading of its allegations in conjunction with plaintiffs' opposition to defendants' motion for summary judgment. Under modern procedural rules, "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f). Since pleadings are to be construed liberally, *Hildebrand v. Honeywell, Inc.,* 622 F.2d 179, 181 (5th Cir.1980), "precision of pleading no longer can be an absolute determinant of either liability or remedy." *DeCosta v. Columbia Broadcasting Sys.,* 520 F.2d 499, 510 (1st Cir. 1975), *cert. denied,* 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976). What is more, considering that the claim was explicitly raised in plaintiffs' opposition papers, defendants can scarcely claim surprise or prejudice. *See Peter Kiewit Sons' Co. v. Summit Constr. Co.,* 422 F.2d 242, 271 (8th Cir.1969). *Cf. Hanson v. Hoffmann,* 628 F.2d 42, 53 n. 11 (D.C.Cir.1980) (so long as defendant is not prejudiced, plaintiff is not bound by legal theory on which he originally relied).

 Substantively, the record shows a genuine conflict of material fact on the full funding claim and, therefore, summary judgment on the claim was inappropriate. *See Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). *Accord, e.g., Emery v. Merrimack Valley Wood Prods., Inc.,* 701 F.2d 985, 990–91 (1st Cir. 1983); *Maiorana v. MacDonald,* 596 F.2d 1072, 1076 (1st Cir.1979). Thus, to this extent, the district court's grant of summary judgment is reversed and the full funding claim is remanded for further proceedings.

## IV. Assets "Attributable To" Medical Division Employees

Plaintiffs read section X, insofar as it provides for transfer of pension funds "attributable to" Medical Division employees, as giving rise to two related claims: (1) that defendants breached the December 31, 1980 agreement by refusing to transfer to plaintiffs a *pro rata* share of the Healthco Plan's surplus, and (2) that this refusal also constituted a breach of a fiduciary duty under ERISA. The district court rejected this reading and held that the phrase "attributable to" referred only to the full funding warranty and conferred no right to a *pro rata* share of the surplus. The court's memorandum stated:

> Those assets properly "attributable to" these employees are only amounts sufficient to fund the accrued benefit, that is, an amount sufficient to fund the employees' pensions commencing at normal retirement age. Although Healthco's employer contributions in excess of the accrued benefit might eventually have been used to meet its employer obligations, these funds have not yet been "attributed to" any employee.

The court further observed that transfer of a share of the surplus would not increase employee benefits, since the Healthco Plan was a defined benefit plan under ERISA, *i.e.,* a plan that provides for fixed benefits not subject to fluctuation. *See* ERISA § 3(35), 29 U.S.C. § 1002(35) (1982). *See also International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 554 n.

3, 99 S.Ct. 790, 794 n. 3, 58 L.Ed.2d 808 (1979) ("Because the Fund made the same payments to each employee who qualified for a pension and retired at the same age, rather than establishing an individual account for each employee tied to the amount of employer contributions attributable to his period of service, the plan provided a 'defined benefit.' "). The court pointed out that only Foster would benefit by a transfer of assets over and above the full funding requirement and concluded that "[s]uch a result is not mandated by the clear language of Section X."

In our view, however, section X is not clear and unambiguous. For we believe that the requirement of that section that the Healthco Plan transfer funds "attributable to" Medical Division employees is susceptible of two plausible readings. It may be seen merely as an explanation of the full funding warranty that follows, or as a separate entitlement to transfer of a *pro rata* share of the surplus. Neither reading is compelled by the language of section X or the other provisions of the agreement.

■ By its terms, the agreement "shall be governed by and construed in accordance with the laws of the State of New York applicable in the case of agreements made and to be entirely performed within such State." Sec. XIX(H). Under New York law, parol evidence is admissible to determine the meaning of ambiguous contractual language. *See Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 77, 430 N.Y.S.2d 179, 184 (4th Dep't 1980); 22 N.Y.Jur.2d, Contracts § 195 (1982).

To resolve the ambiguity in section X, defendants, in support of their motion for summary judgment, filed with the district court an affidavit by Richard Kenney, Vice President of Finance and Administration of Healthco. Kenney's salient allegations were (1) that, during negotiations with Foster, the tentative purchase price for the Medical Division was adjusted on a dollar-for-dollar basis, with the parties intending that Foster pay for each asset it acquired; (2) that the parties agreed that the sum to be transferred to the Foster Plan would be "only the amount necessary to meet Healthco's liability for the accrued employee benefit for which the employer was responsible under the Healthco Plan"; and (3) that neither Healthco nor Foster intended the transfer to be any larger than the amount necessary to fund accrued employee benefits.

Plaintiffs have pointed to nothing in their papers opposing defendants' motion for summary judgment that contradicts Kenney's assertions. Indeed, in their memorandum of law opposing defendants' motion for summary judgment, plaintiffs argued that Kenney's affidavit was improper parol evidence but offered no substantive evidence to challenge his allegations. The only indication that plaintiffs disputed Kenney appeared in a footnote to their memorandum of law, where plaintiffs requested leave to submit supplemental affidavits that would contradict some of Kenney's assertions, should the court find his affidavit relevant.

Kenney's explanation of the intent behind section X is consistent with other provisions of the agreement, which enumerate in detail those assets to be transferred. It is also consistent with the detailed balance sheet prepared during negotiation of the agreement. Given these considerations, it is apparent that the parties to the agreement intended that Foster pay for each asset it acquired and that the surplus in the Healthco Plan not be included in their calculations.

■ In these circumstances, plaintiffs have failed to establish the existence of a genuine issue of material fact. Under the case law:

> To be considered "genuine" for Rule 56 purposes a material issue must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." [Citation omitted.] The evidence manifesting the dispute must be "substantial", [citation omitted] going beyond the

allegations of the complaint [citation omitted].

*Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). The oblique offer of proof in plaintiffs' footnote fails the test of rule 56(e), which provides in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, shall be entered against him. [Emphasis added.]

*See First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968) (refusing to disregard rule 56(e) in antitrust action where plaintiff failed to provide "significant probative evidence" supporting the complaint); *Soar v. National Football League Players' Ass'n,* 550 F.2d 1287, 1289 n. 4 (1st Cir.1977) (refusing to deny summary judgment on the basis of vague supposition that evidence might be produced at trial); *Salgado v. Piedmont Capital Corp.,* 534 F.Supp. 938, 944 (D.P.R.1981) ("The rule means what it says."). Accordingly, we agree with the district court's conclusion that section X did not obligate Healthco to transfer any pension funds beyond those necessary to finance the employees' accrued benefits.

Plaintiffs have argued further that the district court relied on an erroneous factual premise, namely, that the surplus was traceable entirely to employer contributions. Whether or not the court indeed relied on this premise, and whether or not this premise is true, are irrelevant. For the Kenney affidavit and the surrounding circumstances explain the intent of the parties.

Finally, plaintiffs' ERISA claims are without merit. Plaintiffs characterize defendants as fiduciaries and cite ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), and *Winpisinger v. Aurora Corp. of Illinois, Precision Castings Div.,* 456 F.Supp. 559, 566 (N.D.Ohio 1978), for the proposition that fiduciaries may not prefer employees who would remain under the coverage of the Healthco Plan over those who would become participants in the Foster Plan. But, having been fixed, the pension benefits of Medical Division employees are not subject to increase, even should plaintiffs recover a *pro rata* share of the Healthco Plan's surplus. As long as the Foster Plan is fully funded, the employees are fully protected and will receive their defined benefits. Similarly, employees remaining under coverage of the Healthco Plan will enjoy no increase in their defined benefits by virtue of the surplus. In short, neither group of employees is preferred over the other and hence defendants have breached no fiduciary duty.

### V. *Conclusion*

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed and remanded in part.

*Affirmed in part and reversed and remanded in part.*