USCA1 Opinion

 

 June 17, 1992 _________________________ No. 91-2206 RICHARD G. ALLEN, ET AL., Plaintiffs, Appellants, v. ADAGE, INC., Defendant, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Keeton,* District Judge. ______________ _________________________ Ruth A. Bourquin, with whom Warren H. Pyle and Angoff, __________________ _______________ _______ Goldman, Manning, Pyle, Wanger & Hiatt, P.C. were on brief, for _____________________________________________ appellants. John F. Welsh, with whom Jason Berger, Kerry M. Richard, and _____________ ____________ ________________ Testa, Hurwitz & Thibeault were on brief, for appellee. __________________________ _________________________ _________________________ ____________ *Of the District of Massachusetts, sitting by designation. SELYA, Circuit Judge. The fifty-four plaintiffs in SELYA, Circuit Judge. _____________ this case sought payment of benefits under a severance pay plan (Plan) maintained by their quondam employer, Adage, Inc. Their claims were preferred pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. 1001-1461 (1988), and specifically, ERISA 1132(a)(1)(B). The district court granted summary judgment in favor of the defendant. We affirm. I. BACKGROUND I. BACKGROUND At the times material hereto, Adage manufactured, sold, and serviced high performance graphics and CAD/CAM products. Its field service unit employed approximately one hundred twenty persons at more than thirty locations in the United States and Canada. In 1988, as part of an effort to alter the focus of its business, Adage opened negotiations with National Computer Systems (NCS) for the sale of the field service unit. Eventually, an agreement was reached. The principals agreed that, as a condition precedent to any sale, no fewer than eighty-five percent of Adage's field service employees would have to accept continuing employment with NCS. A series of meetings ensued. At those meetings, NCS extended individualized employment offers to every field service employee. The workers were given a very short time within which to respond to the offers. All the plaintiffs, and virtually all the affected 2 members of the work force, agreed to join NCS.1 On August 12, 1988, the sale was consummated. The parties agree that, without exception, the former Adage employees were paid at least as much by NCS as they were earning before the sale. They were given full credit for years in service in NCS's calculation of vacation time. Waiting periods with respect to health insurance and dental coverage were waived. Other incidents of employment were roughly comparable.2 II. THE PLAINTIFFS' SUIT II. THE PLAINTIFFS' SUIT The plaintiffs, none of whom experienced any period of unemployment during the transition, sought to collect benefits under Part B of the Plan, which read in its entirety: ____________________ 1A special situation obtained in regard to plaintiff Clinton B. Smith, Jr., Adage's director of field services. The Adage/NCS agreement was expressly conditioned on Smith's acceptance of employment with NCS. Smith balked at NCS's initial offer. When NCS sweetened the pot, offering him a unique guarantee of employment coupled with a golden parachute, Smith capitulated. NCS and Adage also made special severance arrangements for three other Adage managers. 2The record evidences some disagreement about whether certain fringe benefits offered by NCS were commensurate with those provided by Adage. These differences cut both ways. The plaintiffs also claim that, although Adage had classified them as "exempt" employees, NCS reclassified some of them as "non- exempt." Since the district court was punctilious in "view[ing] the entire record in the light most hospitable to the part[ies] opposing summary judgment" and "indulging all reasonable inferences in [their] favor," Griggs-Ryan v. Smith, 904 F.2d 112, ___________ _____ 115 (1st Cir. 1990), we need not pursue the asserted disparities in any detail. The dispute over these incidentals, while "genuine," is not "material" in the Rule 56 sense. See, e.g., ___ ____ Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) _______ ________________ (defining a material fact as "one that 'affect[s] the outcome of the suit'") (citations omitted). 3 In the event that an involuntary termination is caused by reduction-in-force the following guidelines have been established to provide consistency in severance provided to employees. NON-EXEMPT __________ Years of Continuous Service Severance ______________________________ _________ Salary ______ 6 mon. - 3 years 2 weeks 4 - 5 years 3 weeks 5+ years 4 weeks EXEMPT ______ All exempt employees will be entitled to a minimum of four weeks salary plus one week salary for each full year of continuous service. This provision for "consistency in severance" was the only provision in the Plan relevant to the dispute over severance benefits in this case. After the pleadings were closed and discovery was completed, the district court granted Adage's motion for summary judgment under Fed. R. Civ. P. 56(c). The court assumed arguendo ________ that the plaintiffs had been subjected to "an involuntary termination" of their employment with Adage, and focused on what caused the termination. The court concluded that the phrase "reduction-in-force" as used in the Plan was intended "to connote a situation of unexpected loss of employment" as opposed to a transfer from one payroll to another. Because the plaintiffs' separation from Adage's service was not "caused by reduction-in- force," no severance pay was due. The district court subsequently refused to alter or amend its judgment in light of our opinion in Bellino v. _______ 4 Schlumberger Technologies, Inc., 944 F.2d 26 (1st Cir. 1991). ________________________________ This appeal followed. III. THE LEGAL LANDSCAPE III. THE LEGAL LANDSCAPE At the threshold, we consider both the criteria governing the district court's adjudication of this case and the standard of appellate review. A. A. __ Except in those cases where a different level of scrutiny is indicated in the benefit plan itself, the district court considers a denial-of-benefits challenge afresh, without deferring to the employer's interpretation of the plan. See ___ Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); ___________________________ _____ Bellino, 944 F.2d at 29; see also 29 U.S.C. 1132(a)(1)(B). _______ ___ ____ Here, nothing in the Plan indicates that another approach is to be used. Hence, the lower court appropriately afforded de novo __ ____ review. In examining benefit denials under ERISA plans, and in interpreting such plans, a court should employ both trust and contract principles. See Bruch, 489 U.S. at 110-12; Burnham v. ___ _____ _______ Guardian Life Ins. Co., 873 F.2d 486, 489 (1st Cir. 1989). ________________________ Withal, the court should keep in mind that severance pay plans are employee welfare benefit plans, and thus, are not vested. See, e.g., Adams v. Avondale Indus., Inc., 905 F.2d 943, 947 (6th ___ ____ _____ _____________________ Cir.) (citing cases), cert. denied, 111 S. Ct. 517 (1990). _____ ______ Therefore, resolution of questions concerning employer obligations under such plans must be tailored to avoid 5 undermining Congress's "considered decision that welfare benefit plans not be subject to a vesting requirement." Id. ___ The question of whether a contract term is ambiguous is one of law for the judge. See, e.g., ITT Corp. v. LTX Corp., 926 ___ ____ _________ _________ F.2d 1258, 1261 (1st Cir. 1991); In re Navigation Technology _____________________________ Corp., 880 F.2d 1491, 1495 (1st Cir. 1989). While "an argument _____ between parties about the meaning of a contract is typically an argument about a 'material fact,'" Boston Five Cents Sav. Bank v. ___________________________ Secretary of Dept. of HUD, 768 F.2d 5, 8 (1st Cir. 1985), summary _________________________ judgment is not necessarily foreclosed. "Even if there is ambiguity in the language . . . the evidence presented about the parties' intended meaning may be so one-sided that no reasonable person could decide the contrary." Id.; see also American First ___ ___ ____ ______________ Inv. Corp. v. Goland, 925 F.2d 1518, 1522 (D.C. Cir. 1991) ___________ ______ ("summary judgment may be appropriate in a contract case even if the contract is ambiguous so long as there is no evidence that would support a conflicting interpretation of the agreement").3 A good illustration of the rule is contained in Foster Medical ______________ Corp. Employees' Pension Plan v. Healthco, Inc., 753 F.2d 194 _______________________________ _______________ (1st Cir. 1985). There, the plaintiff alleged that the defendants had failed to abide by certain provisions of an agreement for the transfer of designated assets and liabilities. ____________________ 3The flip side of the coin is that, in situations where the extrinsic evidence relevant to the interpretation of an ambiguous contractual provision is contested or contradictory, summary judgment will often be inappropriate. See, e.g., Space Master ___ ____ _____________ Int'l, Inc. v. City of Worcester, 940 F.2d 16, 19-20 (1st Cir. ___________ _________________ 1991); Computer Sys. of America, Inc. v. International Business _______________________________ ______________________ Machines Corp., 795 F.2d 1086, 1090-91 (1st Cir. 1986). ______________ 6 We found the challenged provisions to be ambiguous, but noted that defendants had adduced evidence probative of the parties' intent while plaintiffs, for their part, had "offered no substantive evidence to challenge [this proof]." Id. at 198. We ___ concluded that, in such circumstances, plaintiffs had "failed to establish the existence of a genuine issue of material fact" concerning the meaning of the agreement. Id. Accordingly, we ___ upheld a summary judgment in the defendants' favor, notwithstanding the ambiguity. Id. at 198-99. ___ Here, Adage proffered evidence in connection with its Rule 56 motion to the effect that several reductions in force were conducted in the period 1987-1989, resulting in various awards of severance benefits pursuant to the Plan. The affected employees were not notified of their impending termination until their last day of work. They were then furnished with layoff notices and personnel documents advising that "[i]f you choose to collect unemployment during such severance time, your severance checks will stop immediately. You have the right to file for unemployment at any time while unemployed." The appellants neither challenged this description of Adage's past praxis nor submitted evidence of any divergent practices. Because there was no dispute concerning the underlying facts, insofar as those facts were material, summary judgment might appropriately lie. See Franklin v. Pitney Bowes, Inc., 919 F.2d 45, 47-48 (6th Cir. ___ ________ ___________________ 1990) (noting that summary judgment was appropriate where defendants had proffered evidence supporting their interpretation 7 of a plan, including past practice under that plan, and plaintiffs had offered no contradictory evidence); Burger King ___________ Corp. v. Horn & Hardart Co., 893 F.2d 525, 528 (2d Cir. 1990) _____ ___________________ (disposition by summary judgment is proper if the evidence of intent submitted by one party "does not conflict with [the other party's] evidence"); Burnham, 873 F.2d at 488 (determining that _______ where the only "authentic controversy presented on appeal concerns the parties' divergent interpretations of . . . established facts," summary judgment was appropriate); Chambers ________ v. Prudential Ins. Co., 776 F. Supp. 1166, 1168, 1172 (S.D. Miss. ___________________ 1991); cf. Adcock v. Firestone Tire & Rubber Co., 822 F.2d 623, ___ ______ ___________________________ 626-28 (6th Cir. 1987) (same; using pre-Bruch test).4 _____ B. B. __ We subject the district court's grant of summary judgment to plenary review, taking the record in the light most congenial to the nonmovants and indulging all reasonable inferences in their favor. Garside v. Osco Drug, Inc., 895 F.2d _______ ________________ 46, 48 (1st Cir. 1990). This standard applies unreservedly in the ERISA context. See, e.g., Bellino, 944 F.2d at 29; Harper v. ___ ____ _______ ______ ____________________ 4We note that the Third Circuit has taken a more restrictive slant. See Taylor v. Continental Group Change in Control ___ ______ _______________________________________ Severance Pay Plan, 933 F.2d 1227, 1232, 1236 (3d Cir. 1991) ___________________ (holding that the meaning of ambiguous terms in an ERISA plan is a question of fact forestalling brevis disposition); Schoch v. ______ First Fidelity Bancorporation, 912 F.2d 654, 656 (3d Cir. 1990) ______________________________ ("If the opposing party asserts a reasonable reading differing from that of the district court, then the meaning of the contract must be resolved at trial."). We decline to follow this course, believing that these decisions are at variance with the approach we have charted in cases such as Burnham and Boston Five Cents _______ _________________ Savings Bank. ____________ 8 R.H. Macy & Co., 920 F.2d 544, 545 (8th Cir. 1990). To affirm a _______________ grant of summary judgment, we must be satisfied that there is no genuine dispute concerning a material fact and that the movant is entitled to judgment as a matter of law. Burnham, 873 F.2d at _______ 488. This protocol, while generous to summary judgment opponents, does not free them from all obligations. When nonmovants bear the burden of proof on particular issues, they must "reliably demonstrate that specific facts sufficient to create an authentic dispute exist." Garside, 895 F.2d at 48. _______ IV. ANALYSIS IV. ANALYSIS The appellants' argument has two main ingredients. First, they contend that the district court erred in finding the term "reduction-in-force" ambiguous. Second, they contend that the court compounded its initial error by resolving the perceived ambiguity incorrectly, thereby skewing the Plan. A. A. __ We start with the certainty vel non of the words ___ ___ "reduction-in-force." The district court, finding an amphiboly, felt free to place an interpretive gloss on the phrase. In appellants' view, this freelancing offended both our holding in Bellino and the dictates of plain meaning. We disagree. _______ The Effect of Bellino The Effect of Bellino _____________________ We think this case is distinguishable from Bellino. _______ Although both cases arose out of similar fact patterns and the 9 Bellino court ruled that the term "reduction in force" had a _______ clear, unambiguous meaning, Bellino, 944 F.2d at 30, that ruling _______ was made against the backdrop of a particular set of plan provisions. By its very nature, ambiguity is not an abstract concept. Rather, it concerns meaning in relation to some identified issue or issues. To illustrate, saying that "reduction-in-force" has a clear, unambiguous meaning in relation to the disputed issue in Bellino is not to say that it has a _______ clear, unambiguous meaning in relation to all similar issues in all other cases, regardless of the particular characteristics of the severance pay plans under consideration. Schlumberger's severance pay plan, scrutinized in Bellino, spelled out the reach and rationale of the term _______ "reduction in force" for Schlumberger's purposes. The relevant ___________________________ language of the Schlumberger plan merits reproduction here: Reduction in Force From time to time, Schlumberger may need to terminate an employee for lack of work, poor business conditions, or change in business focus. Should such terminations become necessary, Schlumberger will provide employees with salary and benefits continuation for a specified period of time. Bellino, 944 F.2d at 30. The very language of the Schlumberger _______ plan made clear that personnel actions taken in response to certain enumerated events would comprise a reduction in force. The case before us is at a considerable remove. Adage's plan contains neither an explanation of the phrase nor any effort to define it. Contrary to appellants' insinuations, the Bellino court _______ 10 did not presume to announce a rule of construction mandating that "reduction in force" was henceforth to be deemed a denotatively rigid term of art. This much is obvious from the panel's repeated limitation of its discussion to the facts of record. See, e.g., id. (agreeing that the plan language "is clear and ___ ____ ___ unambiguous as applied to the facts of this case") (emphasis ________________________________________ supplied); id. at 30-31 (concluding that "appellees' terminations ___ constituted a 'reduction in force' within the meaning of the ___________________________ plan") (emphasis supplied); id. at 32 (referring to the necessity _____ ___ of discerning the meaning of questioned terms by considering them within the context of the particular plan). Indeed, after examining the diverse interpretations of "reduction in force" interspersed throughout the case law, the Bellino court concluded _______ that judges, instead of crafting "rigid definitions," should strive to "construe ERISA plans by employing accepted principles of contract and trust law." Id. at 31. ___ In sum, while we do not retreat from Bellino or _______ question its rationale, we agree with the court below that Bellino does not foretell the interpretation to be accorded to _______ the entirely distinct plan here at issue. Plainly Unplain Plainly Unplain _______________ Lacking the authority of Bellino to support their _______ argument that the phrase "reduction-in-force" is inherently unambiguous, appellants' contentions are left with little foundation. The Plan itself contains no elaboration of the phrase. Dictionary definitions are inconclusive. Ordinary usage 11 points toward the district court's construction. Last but not least, common sense counsels against the appellants' position. Whatever the exact ramifications of the highly nuanced phrase "reduction-in-force," that term would rarely be thought to cover, for severance pay purposes, the selling of a division to another company under circumstances in which the work force is kept solidly in place by the purchaser, doing roughly comparable work for roughly comparable wages. Indeed, several courts have so held. See, e.g., Adcock, 822 F.2d at 626-27 (holding that the ___ ____ ______ sale of a division, not resulting in displacement of employees, did not constitute a reduction in force; noting split among courts on the issue); Lesman v. Ransburg Corp., 719 F. Supp. 619, ______ ______________ 621 (W.D. Mich. 1989) (holding that the sale of an entire business to a new employer did not constitute a reduction in force), aff'd, 911 F.2d 732 (6th Cir. 1990); see also Awbrey v. _____ ___ ____ ______ Pennzoil Co., ___ F.2d ___, ___ (10th Cir. 1992) [1992 WL 69070, ____________ at *4] (holding that employees of a division sold by a corporation were not entitled to severance benefits from their former employer); Lakey v. Reminington Arms Co., 874 F.2d 541, _____ _____________________ 545 (8th Cir. 1989) (similar). To be sure, cases can be found that reach the opposite result. But, the point is not whether cases such as Adcock and ______ Lesman are inevitably correct. The point is that those cases ______ which flatly reject the notion that the sale of a business unit constitutes a reduction in force, triggering payment of severance benefits, when the sale does not result in any period of 12 unemployment or significant loss of income for the seller's former employees convincingly demonstrate that the phrase "reduction-in-force," shorn of built-in definitional trappings or compelling context, does not have a single plain and unambiguous meaning. In our view, a phrase which, like this one, is susceptible to differing, but nonetheless plausible, constructions, depending in part on the context in which it is used, is ambiguous. See Fowler v. Boise Cascade Corp., 948 F.2d ___ ______ ___________________ 49, 54 (1st Cir. 1991) ("Contract language is ambiguous when it is reasonably prone to different interpretations."); In re ______ Navigation Technology Corp., 880 F.2d at 1495 (similar). ___________________________ So here. The phrase "reduction-in-force" is sufficiently imprecise in the present setting that its meaning must be considered unplain. Refined to bare essentials, the extent of Adage's liability to its former employees for severance pay, if any, cannot definitively be ascertained from the language of the Plan alone. Because appellants' interpretation of the disputed phrase is only one of several possible meanings reasonably available on an unvarnished reading of the Plan and, in the bargain, among the least persuasive of that cadre5 the ____________________ 5Of course, appellants cannot win by simply persuading the court that "reduction-in-force" is unambiguous. They must proceed to show that their proposed interpretation of the allegedly unambiguous term is correct. In this case, if we were to assume no ambiguity and consider only whether appellants' proposed interpretation is supportable, we would nevertheless affirm because appellee and the district court have proposed an interpretation of "reduction-in-force" that is more reasonable than appellants' proposed interpretation. 13 district court did not err in determining that the phrase was ambiguous. B. B. __ This determination does not end our inquiry. Even though the Plan is ambiguous, we must still consider whether the district court appropriately resolved the ambiguity. Appellants' Assertions Appellants' Assertions ______________________ Appellants urge that we should apply the doctrine of contra proferentem and resolve the ambiguity against Adage, as __________________ the draftsman. But in most ERISA cases, resort to contra ______ proferentem contradicts the combined principles of the law of ___________ trusts and de novo review. In Bruch, the Court analogized ERISA __ ____ _____ benefit plans to trust agreements and observed that trust agreements are to be construed "without deferring to either party's interpretation." Bruch, 489 U.S. at 112. The clear _____ implication of Bruch is that courts should not defer to either _____ side in interpreting severance pay plans. See Bellino, 944 F.2d ___ _______ at 31-32; Brewer v. Lincoln Nat'l Life Ins. Co., 921 F.2d 150, ______ ____________________________ 153-54 (8th Cir. 1990), cert. denied, 111 S. Ct. 2872 (1991); _____ ______ Avondale Indus., 905 F.2d at 950. In short, de novo review looks _______________ __ ____ to the language of the plan (supplemented in appropriate cases by evidence essential to resolving a relevant ambiguity), not to any one party's interpretation of that language.6 ____________________ 6It is true that the doctrine of contra proferentem has been __________________ applied to insurance contracts in the ERISA environment. See, ___ e.g., Masella v. Blue Cross & Blue Shield of Connecticut, Inc., ____ _______ _______________________________________________ 936 F.2d 98, 107 (2d Cir. 1991); Kunin v. Benefit Trust Life Ins. _____ _______________________ Co., 910 F.2d 534, 539-41 (9th Cir.), cert. denied, 111 S. Ct. ___ _____ ______ 14 Equally unavailing is appellants' bootstrap argument that Adage should lose because it was required to memorialize in writing any exceptions or amendments to the grant of severance pay contained in the Plan. The central fallacy of this argument is that it presumes the validity of a proposition that we have already discarded. In order to know that something is an exception or amendment, one must assume that he knows exactly how far the basic document reaches. But, this is precisely what we do not know from the face of the Plan which is, as we have said, ambiguous in respect to the sweep of the term "reduction-in- force." The Meaning of the Phrase The Meaning of the Phrase _________________________ Putting these assertions to one side, we must still determine the meaning of the ambiguous phrase. In doing so, we are bound to construe the language of the plan "as interpreted in light of all the circumstances and such other evidence of the intention of the settlor . . . as is not inadmissible," Bruch, _____ 489 U.S. at 112 (citation omitted), and in a manner consistent with the method of Rule 56. Thus, we must satisfy ourselves that the evidence presented about the parties' intended meaning would not support conflicting interpretations of the disputed phrase. ____________________ 581 (1990), reh'g denied, 111 S. Ct. 802 (1991). But we, like _____ ______ other courts, believe that application of the doctrine in ERISA cases generally would be inappropriate. See Taylor, 933 F.2d at ___ ______ 1233-34; Brewer, 921 F.2d at 154 n.2. In fact, the Ninth Circuit ______ appears recently to have limited Kunin in much the way we _____ suggest. See Eley v. Boeing Co., 945 F.2d 276, 279-80 (9th Cir. ___ ____ __________ 1991) (noting that contra proferentem is applied to insurance __________________ contracts, but not "automatically or universally . . . to other [ERISA] contracts"). 15 In deciphering the words "reduction-in-force," we think it is important to remember that, typically, reductions in force are permanent layoffs undertaken for budgetary or economic reasons. Adams v. Ampco-Pittsburgh Corp., 733 F. Supp. 998, 1001 _____ ______________________ (W.D. Pa. 1989). It is also important in this case to remember that the words appear in a severance pay plan and that the usual purpose of such a plan is, first and foremost, to provide employees with a buffer against the privations which so often attend unforeseen layoffs. See, e.g., Awbrey, ___ F.2d at ___ ___ ____ ______ [1992 WL 69070, at *4]; Bradwell v. GAF Corp., 954 F.2d 798, 801 ________ _________ (2d Cir. 1992); Adcock, 822 F.2d at 626-27; Jung v. FMC Corp., ______ ____ __________ 755 F.2d 708, 713 (9th Cir. 1985); Sly v. P.R. Mallory & Co., 712 ___ __________________ F.2d 1209, 1211 (7th Cir. 1983). While unemployment resulting from a reduction in force is not always a necessary condition for receipt of severance benefits, Bellino, 944 F.2d at 31, it is _______ probable, in the absence of language indicating otherwise, that a severance pay plan is geared to sheltering loyal workers from a precipitous loss of income. This probability is enhanced when the district court's recension of the phrase is contrasted with the alternative reading advocated by the appellants. It is surpassingly difficult to fathom why an employer would provide a trouvaille for employees who, when separated from its service, are simultaneously transferred en masse, by prearrangement, to another employer's payroll, without any temporal hiatus or significant diminution of earnings or benefits. Accord Awbrey, ______ ______ 16 ___ F.2d at ___ [1992 WL 69070, at *4] (listing cases); Bradwell, ________ 954 F.2d at 801 ("in the context of the sale of a business where the buyer retains the former owner's employees, it would give a windfall to award severance pay to employees who never changed their jobs, and were never out of work"). We think it beggars credulity to impute such altruistic beneficence to an employer without some clear indication to that effect in the plan documents. The extrinsic evidence, though not robust, is one-sided and points unerringly in the same direction. As mentioned earlier, see supra p. 7, Adage offered uncontroverted proof of ___ _____ its past practice under the Plan.7 Although past practice may not have as much probative value after Bruch as theretofore, see _____ ___ Avondale Indus., 905 F.2d at 950, it is still frequently used by _______________ courts as a device for deciphering the meaning of ambiguous plan provisions. See, e.g., Taylor, 933 F.2d at 1233; Franklin, 919 ___ ____ ______ ________ F.2d at 47; Garavuso v. Shoe Corps. of America Indus., Inc., 709 ________ ____________________________________ F. Supp. 1423, 1428 (S.D. Ohio), aff'd, 892 F.2d 79 (6th Cir. _____ 1989). The lower court was entitled to look to such "past practice" evidence in its effort to establish the meaning of the phrase "reduction-in-force." ____________________ 7We do not consider, under the rubric of past practice, the statements of Adage officials concerning the meaning of the Plan. These officials were not the Plan's draftsmen nor otherwise involved in its formulation. Notwithstanding our disregard of this evidence, we agree with the district court that, "[e]ven without these statements of the Adage officials . . . there is ample objective, undisputed evidence contained in the record to establish the true intent of Adage's policy." 17 Here, the evidence of Adage's past practice in layoff situations confirmed that the Plan's primary goal was to aid terminated workers who faced the hardships of unemployment, not merely to reward past service. Typically, Adage gave very little notice to employees prior to layoff and it conditioned receipt of severance pay upon loss of income, i.e., nonreceipt of unemployment insurance benefits. This is strongly indicative of a view that the Plan was meant to provide a cushion to workers faced unexpectedly with the rigors of sudden unemployment. While Adage had not previously sold a segment of its operations, and thus, had no track record in identical situations, we think that its previous method of handling layoffs had appreciable probative value. In fine, the ambiguity in the wording of Adage's severance pay plan was susceptible to clarification by resort to ordinary usage, the realities of commerce, and the company's past practice. These factors convince us that, in the utter absence of elaborate definitions or explicit statements of aspiration to reward myrmidons for past service regardless of the circumstances surrounding termination, the phrase "reduction-in-force" was manifestly intended to have an economic dimension, requiring loss of income or, at least, unemployment as a sine qua non for ____ ___ ___ coverage. Thus, appellants' interpretation of the Plan is insupportable on this record. To sum up, the Plan must be accorded its natural construction and interpreted to comport with the root purpose of 18 severance pay plans generally. Given the uncontradicted facts, the district court correctly concluded on summary judgment that Part B of the Plan did not cover former Adage employees who, coincident with their separation from service, began comparable employment at comparable wages with NCS (the company that had acquired the relevant unit of Adage's business operations). Accord Harper, 920 F.2d at 545-46 (holding that employees ______ ______ immediately rehired by a terminating employer's successor under terms comparable to those previously in effect were not entitled to severance pay benefits). V. CONCLUSION V. CONCLUSION We need go no further.8 On what we have before us, there is no disputed issue of material fact. The Plan and past practice under it combine to reflect the intended meaning of the phrase "reduction-in-force." The appellants, who did not come within that meaning, were not entitled to receive the severance benefits for which they sued. Affirmed. Affirmed. ________ ____________________ 8The parties have raised a number of other arguments in connection with this matter. Our disposition of the plaintiffs' appeal renders consideration of most such points unnecessary. The remainder do not warrant discussion. 19