<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 97-2389

                  INES TORRES VARGAS, ET AL.,

                    Plaintiffs, Appellants,

                               v.

             DR. MANUEL SANTIAGO CUMMINGS, ET AL.,

                     Defendants, Appellees.

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

         [Hon. Jos Antonio Fust, U.S. District Judge]

                             Before

                     Selya, Circuit Judge,
                                
          Coffin and Bownes, Senior Circuit Judges.
                                
                                

    Raul S. Mariani Franco, with whom Harry Anduze Montao was on
brief, for appellants.
    Jos Hector Vivas, with whom Rita M. Velez Gonzalez and Vivas
& Vivas were on brief, for appellees.

July 10, 1998

                                
                                

 SELYA, Circuit Judge.  Plaintiffs-appellants Ines Torres
Vargas, Evelyn Torres Vargas, and Raul Torres Vargas are the adult
children of Raul Torres Arroyo.  After their father died, they
brought suit for medical malpractice against Dr. Manuel Santiago
Cummings (Santiago).  The district court granted summary judgment
for Santiago on the ground that he was an employee of the
Commonwealth of Puerto Rico and, as such, was entitled to immunity
under Puerto Rico law.  The plaintiffs now seek to set aside that
decision, claiming that Santiago was an independent contractor (not
covered by the immunity provision), or, at least, that discovery
should have been allowed before the court ruled.  We vacate the
summary judgment order.
I.  BACKGROUND
 We rehearse the material facts, stating them in the light
most favorable to the parties opposing summary judgment, seeGarside v. Osco Drug, Inc., 895 F.2d, 46, 48 (1st Cir. 1990), and
then recount the travel of the case.
                         A.  The Facts.
 In 1990, the Puerto Rico Department of Health (the
Department) hired Santiago, an anesthesiologist, to render services
at Ponce Regional Hospital (the Hospital), a government-owned
facility primarily serving indigent patients.  The parties' written
agreement (the Contract) covered a one-year term commencing on July
1, 1990.  It obligated Santiago to work in the Hospital's operating
rooms from 7:00 a.m. until 3:00 p.m., Monday through Friday, and to
remain "on call" every third weekend.  It also required him to
complete medical records for assigned patients, submit reports to
the Department when requested, and obtain malpractice insurance at
his own expense.  In return, the Department agreed to pay Santiago
a stipend of $10,000 per month, without any withholdings, and also
agreed that he could keep any additional fees that he might collect
for services rendered to solvent patients (e.g., those who were
covered by Medicare or private insurance).  The Contract stated
explicitly that Santiago would not be entitled to vacation, sick
leave, or other fringe benefits.
 On February 26, 1991, the Hospital admitted the
plaintiffs' decedent, Raul Torres Arroyo (an uninsured person),
with complaints of severe throat pain.  Dr. Pedro Vendrell, a
surgeon, scheduled a laryngoscopy and throat biopsy for the next
day.  The procedure went badly:  Santiago experienced difficulty in  
intubating Torres Arroyo and a tracheotomy was required.  Post-
operatively, the tracheotomy tube became dislodged and left the
patient without a sufficient airway.  As a result, he suffered
respiratory arrest, heart failure, and brain damage.  Within a
week, he died.  Torres Arroyo's children blamed a number of care
providers, including Santiago, for his demise.

                    B.  Travel of the Case.
 After unsuccessfully endeavoring to serve Santiago in the
Puerto Rico courts, the plaintiffs voluntarily dismissed all
earlier actions against him and brought suit in federal district
court.  See 28 U.S.C.  1332(a) (1994) (diversity jurisdiction).  
Santiago answered the federal complaint on September 4, 1996, and
two weeks later moved for summary judgment, citing the immunity for
government-employed physicians conferred by the Puerto Rico Medico-
Hospital Professional Liability Insurance Act (the MHPLIA), P.R.
Laws Ann. tit. 26,  4105 (1997).  In their opposition, the
plaintiffs countered that the Contract established an independent
contractor relationship between Santiago and the Commonwealth, or,
alternatively, that his employment status was a question of fact
for trial.  In addition, they bemoaned the lack of "meaningful
discovery," advocated an adjudicative delay, and proclaimed their
intention to "supplement the instant request with a [Fed. R. Civ.
P.] 56(f) affidavit . . . within the next five (5) days."  Almost
a year elapsed, but the plaintiffs never filed either a Rule 56(f)
motion or an affidavit explaining the need for discovery.
 On October 15, 1997, the district court granted
Santiago's summary judgment motion.  This appeal ensued.
II.  DISCUSSION
 We begin, and end, with the plaintiffs' primary
contention:  that, contrary to the lower court's viewpoint, the
Contract does not compel the conclusion that the defendant was an
employee of the Commonwealth within the meaning of the immunity
statute.  We divide our analysis into three segments, first
describing the MHPLIA, then discussing other legal principles of
potential relevance to our inquiry, and finally, addressing the nub
of the appellants' asseveration.  Because the district court
terminated the suit at the summary judgment stage, our review is
plenary.  See Garside, 895 F.2d at 48.
                        A.  The MHPLIA. The MHPLIA provides:
 No health service professional may be included
 as a defendant in a civil suit for damages due
 to malpractice caused in the performance of
 his profession while said health service
 professional acts in compliance with his/her
 duties and functions as an employee of the
 Commonwealth of Puerto Rico, its dependencies,
 instrumentalities and municipalities.

P.R. Laws Ann. tit. 26,  4105.  The Puerto Rico Supreme Court has
construed the MHPLIA as containing three fundamental requirements
for immunity:
 (1) [the person who furnishes the service]
 must be a health care professional; (2) the
 harm caused by his malpractice must have taken
 place in the practice of his profession; and,
 (3) he must have acted in compliance with his
 duties and functions as an employee of the
 Commonwealth of Puerto Rico, its agencies,
 instrumentalities, and municipalities.

Flores Romn v. Ramos Gonzlez, 90 J.T.S. 132 (P.R. 1990) (official
translation, slip op. at 3-4).
 The third requirement   that an immunity-seeking health
care provider must be an employee of the Commonwealth   often
presents the crucial area of inquiry.  See id. at 5.  So it is
here:  Santiago is a licensed physician and the plaintiffs'
complaint alleges that he committed malpractice whilst practicing
his profession.  Thus, the critical question relates to his
employment status.
 One seemingly reasonable way of answering this question
would be simply to segregate full-time government physicians from
part-timers, designating the former "employees" and the later
"independent contractors."  This solution cannot be countenanced,
however, for the MHPLIA has been interpreted authoritatively to
protect not only physicians who hold full-time career positions
with agencies of the Commonwealth, but also physicians who, though
engaged in private practice, function part-time as government
employees and who, while acting in that capacity, commit alleged
malpractice.  See Lind Rodriguez v. E.L.A., 12 P.R. Offic. Trans.
85, 87, 112 P.R. Dec. 67, 68 (1982).
 In search of a principled approach to determining which
physicians are entitled to protection under section 4105, we
previously parsed Puerto Rico precedents and gleaned the factors to
be weighed in determining whether a physician is to be regarded as
an independent contractor (and, thus, beyond the prophylaxis
afforded by the statute).  See Nieves v. University of Puerto Rico,
7 F.3d 270 (1st Cir. 1993).  It was indicative of independent
contractor status, we wrote, if the physician
 (1) earned compensation on a per-patient
 basis, rather than a flat salary;

 (2) received no fringe benefits of a type
 given to the principal's employees (e.g.,
 vacation or sick leave, pension benefits, tax
 withholding);

 (3) personally owned, invested in, or paid for
 the medical equipment and supplies used to
 treat patients, or the facilities which formed
 the situs of that treatment, or personally
 hired and supervised her own administrative or
 subsidiary medical personnel;

 (4) held and paid for her own medical
 malpractice insurance policy; or

 (5) exercised final judgment as to the
 appropriate medical treatment to render to
 patients.

Id. at 279.  By contrast, it would be indicative of employee status
if a health care provider (1) received a flat salary regardless of
the number of patients seen or procedures performed, (2) received
vacation time, sick leave, and other customary fringe benefits, (3)
used only the government's facilities, equipment, supplies, and
personnel in rendering services, (4) received protection against
malpractice suits at the employer's expense, and (5) enjoyed
relatively little autonomy in practice management.  See, e.g.,
Rivera v. Hospital Universitario, 762 F. Supp. 15, 17-18 (D.P.R.
1991).
 Of course, these factors are merely signposts.  They are
not of equal import:  in performing the necessary triage, the
principal focus should be on "the level of control contractually
reserved to the governmental entity over the physician's provision
of patient services."  Nieves, 7 F.3d at 279.  Moreover, no single
factor possesses talismanic significance.  In the last analysis, a
status determination in a particular case inevitably hinges on the
totality of the circumstances.  See id.  Therefore, an inquiring
court must examine each physician's contract and the surrounding
circumstances to determine whether, according to the contract terms
and other relevant evidence, the particular physician ranks as an
employee of the government agency or other governmental
instrumentality.  See Flores Romn, slip op. at 5-6.
                B.  The Interpretive Framework.
 We pause at this juncture to clarify a point of law.  The
parties in this case agree that the Contract plays a pivotal part
in determining the existence vel non of section 4105 immunity.  
They disagree, however, about whether their dispute over its
interpretation presents a question of law that may be decided by a
court on summary judgment, or, instead, presents a question of fact
that precludes the granting of a Rule 56 motion.  This disagreement
is couched in terms that are reminiscent of a familiar set of legal
rules   rules which provide, in general, that a contract can be
interpreted by the court on summary judgment if (a) the contract's
terms are clear, or (b) the evidence supports only one construction
of the controverted provision, notwithstanding some ambiguity.  SeeAllen v. Adage, Inc., 967 F.2d 695, 698 (1st Cir. 1992); Boston
Five Cents Sav. Bank v. Secretary of Dep't of HUD, 768 F.2d 5, 8
(1st Cir. 1985).
 The initial step in this pavane   the question of whether
a contract is ambiguous   presents a question of law for the
judge.  See United States Liab. Ins. Co. v. Selman, 70 F.3d 684,
687 (1st Cir. 1995); Allen, 967 F.2d at 698.  If the court finds no
ambiguity, it should proceed to interpret the contract   and it may
do so at the summary judgment stage.  See, e.g., In re Newport
Plaza Assocs., 985 F.2d 640, 644 (1st Cir. 1993); J.I. Corp. v.
Federal Ins. Co., 920 F.2d 118, 119 (1st Cir. 1990).  If, however,
the court discerns an ambiguity, the next step   involving an
examination of extrinsic evidence   becomes essential.
    The taking of this second step does not automatically
preclude brevis disposition.  Summary judgment may be appropriate
even if ambiguity lurks as long as the extrinsic evidence presented
to the court supports only one of the conflicting interpretations.  
See Allen, 967 F.2d at 698; America First Inv. Corp. v. Goland, 925
F.2d 1518, 1522 (D.C. Cir. 1991); see also Boston Five, 768 F.2d at
8 (approving summary judgment if "the evidence presented about the
parties' intended meaning [is] so one-sided that no reasonable
person could decide the contrary").  On the other hand, if "the
extrinsic evidence relevant to the interpretation of an ambiguous
contractual provision is contested or contradictory, summary
judgment will often be inappropriate."  Allen, 967 F.2d at 698 n.3.
    This analytic framework is useful when the parties to a
contract are dueling over its meaning and attempt to offer parol
evidence to clarify their intent.  See, e.g., id. at 698-99; Foster
Med. Corp. Employees' Pension Plan v. Healthco, Inc., 753 F.2d 194,
198 (1st Cir. 1985).  Here, however, the framework simply does not
fit, for the question is not what any particular provision of the
Contract means   indeed, one of the contracting parties (the
Department) is not involved in this lawsuit   but, rather, whether
the Contract as a whole establishes (or helps to establish) an
employer-employee relationship sufficient to confer immunity under
section 4105.  In such circumstances, the meaning of the contract
is for the court.  See, e.g., Williams v. United States, 50 F.3d
299, 305-07 (4th Cir. 1995) (appraising contract between the
government and a third party to determine the existence of an
employment relationship for purposes of the plaintiff's FTCA suit);
see also Nieves, 7 F.3d at 279 ("To determine whether a physician
claiming section 4105 immunity is an 'independent contractor,' or
merely a Commonwealth 'employee,' the court must consider the
totality of the circumstances, focusing principally on the level of
control contractually reserved to the governmental entity over the
physician's provision of patient services.") (emphasis supplied).  
We proceed accordingly.
                        C.  The Merits.
    The agreement between Santiago and the Department is
entitled "Contract for Individual Professional Services."  In
addition to its title, its compensation provisions appear
inconsistent with an employer-employee relationship.  The relevant
portion of the Contract not only entitles Santiago to a stipend
from the Department for covering the Hospital's operating rooms,
but also enables him to bill solvent patients separately for his
professional services and to retain all amounts that he collects
from such billings. This stands in stark contrast to the usual
employer-employee arrangement, under which the latter receives a
straight salary or fixed hourly wage from the former for all
services rendered during regular working hours.  Even more telling,
the Contract stipulates that the Department will make no deductions
from the physician's remuneration for taxes, social security, or
the like.  This circumstance undercuts the defendant's claim that
an employer-employee relationship existed.  See Flores Romn, slip
op. at 9 (mentioning, with regard to the conclusion that the
defendant-physicians were independent contractors, that "income
taxes were not withheld from their compensations").
    The Contract is equally explicit in denying Santiago the
type of incremental benefits that are characteristic of a modern
employer-employee relationship.  It provides that he "will not be
entitled to regular or sick leave, nor to travel expenses, nor will
[he] be entitled to fringe benefits."  These benefices are staples
of conventional employment relationships, and thus, the incidence
of such benefits matters in determining whether a health care
professional is an employee entitled to immunity under section
4105.  See Flores Romn, slip op. at 6.  Conversely, their absence
constitutes significant evidence that the contracting parties
considered Santiago to be an independent contractor.
    The Department's insistence that the defendant furnish
his own malpractice insurance also suggests a level of autonomy
indicative of independent contractor status.  In Nieves, where we
found the physician-defendants to be employees, we took care to
point out that the University of Puerto Rico provided malpractice
insurance for them   a fact that "suggested, unless competently
rebutted, an employer-employee relationship."  7 F.3d at 280.  
Here, no countervailing evidence appears in the summary judgment
record, and so the Contract's bare insurance mandate tilts toward
independent contractor status.  See id. at 279; see also Flores
Romn, slip op. at 8 (stating, en route to a finding of independent
contractor status, that "[s]ince the doctors had absolute control
over the type and quality of the treatment provided to their
patients," the state agency with which they had contracted required
them to provide their own malpractice insurance).
    Other provisions of the Contract seem incompatible with
the defendant's present assertion that he was a government employee
during the relevant time frame.  For example, section nine permits
the Department to terminate the Contract should Santiago perform
negligently or abandon his duties, and, in such event, requires him
to "liquidate any work that remains pending at the moment of
dissolution without . . . any additional payment or compensation."  
This insistence that the defendant complete his pending work
without extra compensation after the contractual relationship ends
smacks of an arrangement between principal and agent as opposed to
one between employer and employee.  Similarly, section eighteen of
the Contract states that the defendant's services are "non-
delegable."  Were Santiago an employee of the Department, this
provision would be entirely superfluous.  After all, persons who
are hired as employees generally do not have unilateral power to
delegate their tasks to others.  In the same vein, section sixteen
stipulates that if the defendant "renders services to the
Commonwealth" and is injured, he "may be covered" under the
Commonwealth's On-The-Job Accidents Compensation Act.  Because
employees of the Department are covered automatically under this
workers' compensation program, see P.R. Laws Ann. tit. 11,  2
(1997), section sixteen is pleonastic unless the Contract
establishes an independent contractor relationship.
    To be sure, the Contract is a mixed bag, and some of its
features suggest employee status.  Santiago apparently used the
Hospital's facilities, equipment, staff, and supplies in the
performance of his duties.  See Flores Romn, slip op. at 7
(positing that such usage weighs against independent contractor
status).  Moreover, the provisions fixing Santiago's duty hours and
"on call" schedule are distinctly reminiscent of the type of
hegemony that an employer exercises over an employee.  So, too, is
the Contract's intellectual property provision, section eleven,
which provides that any work product resulting from services
rendered by Santiago at the Hospital   such as research results   
will constitute property of the Department without specific
remuneration.
    Be that as it may, the Contract is conspicuously silent
on the most important factor in the decisional calculus:  the
amount of independence that the physician retains in dispensing his
professional services.  See Nieves, 7 F.3d at 279.  The Contract
makes no mention of specific medical functions or duties, other
than to state generally that the defendant "commits himself to
render anesthesiology services in the [Hospital's] Operating Rooms"
and that he "undertakes to perform in accordance with the standards
of excellence of the Department of Anesthesiology."  
Notwithstanding these fragmentary tendrils, the extent to which
Santiago is under the Department's control remains very much open
to debate.
    The lack of competent evidence on this point is
especially troubling because of the nature of Santiago's specialty.  
An anesthesiologist, of necessity, works primarily in operating
rooms, and is unlikely to have the same trappings of independence
as, say, a primary care physician.  Yet, while many
anesthesiologists are hospital-based, it does not follow that most
anesthesiologists are employed providers as opposed to independent
contractors.  See American Medical Ass'n, Physician Characteristics
and Distribution in the U.S., at Table A21 (1997).  In such a
situation, it seems eminently reasonable to require that an
anesthesiologist claiming section 4105 immunity on the ground that
he is a government employee proffer probative evidence of the facts
relating to the salient issues of independence and control.  And
the desirability of such a proffer is heightened where, as may be
the case here, the anesthesiologist works less than full time for
the government, and, thus, the pivotal inquiry   which must in all
events be restricted to his government work   is narrowly focused.
    We summarize succinctly.  On balance, the Contract seems
more indicative of an independent contractor than an employee. But
the call is not free from doubt, especially since the Puerto Rico
Supreme Court interprets section 4105 expansively.  See Vzquez
Negrn v. E.L.A., 13 P.R. Offic. Trans. 192, 196-97, 113 P.R. Dec.
148, 151 (1982).  Bearing in mind that control and the opportunity
for the exercise of independent judgment are the key integers in
the status equation, see Nieves, 7 F.3d at 279, and that the
Contract is considerably less than pellucid in this regard, we
conclude that the Contract, by itself, does not support the
district court's finding that as a matter of law the defendant was
an employee of the Commonwealth entitled to immunity under section
4105.  This conclusion requires us to vacate the judgment below.
    Our rationale is straightforward.  Section 4105 immunity
is an affirmative defense, see Flores Romn, slip op. at 2, and,
accordingly, the defendant bears the burden of establishing its
applicability.  See Selman, 70 F.3d at 691 (noting the "usual
rule" that "place[s] the burden of proving affirmative defenses on
the party asserting them").  The party who has the burden of proof
on a dispositive issue cannot attain summary judgment unless the
evidence that he provides on that issue is conclusive.  See, e.g.,
Calderone v. United States, 799 F.2d 254, 258 (6th Cir. 1986)
(explaining that if a summary judgment movant has the burden of
proof, "his showing must be sufficient for the court to hold that
no reasonable trier of fact could find other than for the moving
party") (citation and emphasis omitted); Fontenot v. Upjohn Co.,
780 F.2d 1190, 1194 (5th Cir. 1986) ("[I]f the movant bears the
burden of proof on an issue, either because he is the plaintiff or
as a defendant he is asserting an affirmative defense, he must
establish beyond peradventure all of the essential elements of the
claim or defense to warrant judgment in his favor.") (emphasis in
original).  Measured by this yardstick, the defendant's proffered
evidence   the Contract   falls short.
    Where, as here, an employment agreement, in itself, does
not provide sufficiently strong proof of a defendant's employment
status to warrant summary judgment, other evidence sometimes may
cure the defect.  To this end, Santiago posits that he must be
deemed an employee of the Commonwealth even if the Contract, read
as a whole, fails to carry the day "because he was complying with
the year of public service . . . in order to comply with the
requisites to obtain [a] license to practice medicine in Puerto
Rico."  Appellee's Brief at 3.  This argument is unconvincing.  The
Contract says nothing about the public service requirement, and the
documentation that the defendant submitted to the district court on
this point   two affidavits signed months prior to the execution of
the Contract   are far from self-elucidating.  Without better
evidence, the existing record does not establish either that
Santiago toiled at the Hospital, under contract, for a probationary
public service year (during which he treated Torres Arroyo) or that
the conditions attached to such service rendered him an employee
for purposes of section 4105.
    We need go no further.  A trial court may grant summary
judgment only if the record defoliates all genuine issues of
material fact.  See Fed. R. Civ. P. 56(c).  Here, the assembled
facts, taken in the light most flattering to the plaintiffs' theory
of the case, simply do not dictate a conclusion that the defendant
functioned as an employee of the Department during the period in
question.  Consequently, we vacate the order granting summary
judgment and remand the matter.  The employment status issue
requires further development.

    Vacated and remanded.  Costs to appellants.

</body>

</html>