Reed **FRANKLIN**, et al.,
**Plaintiffs–Appellants,**

v.

**PITNEY BOWES, INC.,** et al.,
**Defendants–Appellees.**

No. 89–3588.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 9, 1990.

Decided Nov. 13, 1990.

Edward A. Van Gunten (argued), Toledo, Ohio, for plaintiffs-appellants.

David G. Holcombe (argued), Michael G. Hoy, Baker & Hostetler, Cleveland, Ohio, Thomas W. Palmer, Marshall & Melhorn, Toledo, Ohio, for defendants-appellees.

Before MERRITT, Chief Judge,
KEITH and NORRIS, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

Plaintiffs, twenty-four former employees of defendant Data Documents, Inc., appeal the district court's decision awarding summary judgment in favor of Data Documents and its former parent corporation, defendant Pitney–Bowes, Inc., in plaintiffs' action for severance pay. For the reasons discussed below, we affirm the district court's judgment.

## I.

Data Documents, a Nebraska corporation, manufactures data processing supplies, business forms, and labels. Plaintiffs were employed at the corporation's computer tabulating card plant in Tiffin, Ohio. In the spring of 1984, Data Documents considered closing the plant because of the declining market for computer tabulating cards. At that time, it made plans to give severance pay to those employees who would lose their jobs as a result of the plant closing.

However, in the fall of 1984, Data Documents began negotiating a sale of the Tiffin plant to Advanced Card Supplies, Inc., which agreed to extend offers of employment to all of the Tiffin employees except the plant manager, Dean Unumb. Data Documents terminated Unumb effective December 15, 1984 and paid him six and one-half months' severance pay, with the understanding that he would not be entitled to the money if he was subsequently hired by Advanced Card.

In January 1985, Data Documents terminated the remaining employees without severance pay and sold the plant's assets and inventory to Advanced Card. Pursuant to the sales agreement, Advanced Card immediately extended an offer of employment to all employees, and plaintiffs accepted. Although the rehired employees received the same salary, their fringe benefits were significantly reduced.

A few months after the purchase, Advanced Card began laying off employees without severance pay. It is not clear from the record whether any of the plaintiffs were among those laid off at that time. Two and one-half years later, in June 1987, Advanced Card announced its intention to close the plant and, immediately thereafter, sold it to plaintiffs Charles Daughenbaugh and John Hoyda, who rehired eight of the twenty-four plaintiffs and continued to operate the plant.

Plaintiffs filed this action in state court alleging that they were entitled to severance pay when they were terminated by Data Documents. Defendants removed the case to the United States District Court for the Northern District of Ohio where both parties moved for summary judgment.

Upon consideration of the motions, the district court held that Data Documents' severance pay policy was an employee welfare benefit plan under ERISA and that plaintiffs' claims were governed by ERISA. The court then concluded that those claims should be treated as claims for severance pay under the ERISA provision allowing a plan beneficiary to bring a civil action to recover benefits due him under the terms of a plan. 29 U.S.C. § 1132(a)(1)(B).

The court construed the parties' argument over the terms of Data Documents' plan for severance pay as a question of fact, and concluded that Data Documents had supported its motion with evidence that, under this plan,

> severance pay was distributed only to employees who lost their jobs through no

fault of their own and who did not continue to work for the company in some other capacity, or, in the case of a sale of a Data Documents division, did not retain their jobs with the successor company.... Because the plaintiffs in this case continued to work at the Tiffin plant at the same salary they received as Data employees, they did not experience a period of unemployment and were therefore not qualified for severance pay under the plan as administered by Data.

Concluding that plaintiffs failed to offer any evidence which controverted this characterization of the plan, the court granted defendants' motion for summary judgment since, under the plan, plaintiffs were not entitled to severance pay.

Plaintiffs contend that the district court erred in concluding that there was no genuine issue of material fact as to whether the plan entitled them to severance pay and that, even if summary judgment was appropriate, they are entitled to attorney's fees since they were successful in establishing that Data Documents' severance pay policy was an employee welfare benefit plan under ERISA. Data Documents does not appeal the district court's holding that its severance pay policy constitutes such a plan under ERISA.

## II.

Until recently, when administrators of employee benefit plans denied benefits based upon their own interpretation of such plans, courts reviewed their decisions under an arbitrary and capricious standard of review. *See, e.g., Blakeman v. Mead Containers*, 779 F.2d 1146, 1149 (6th Cir. 1985). However, in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 953–57, 103 L.Ed.2d 80 (1989), the Supreme Court decided that denials of benefits based upon plan interpretations should be reviewed *de novo* unless the plan itself gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. In this case, the district court followed *Bruch*.

## III.

■ Plaintiffs contend that they introduced sufficient evidence to raise a genuine issue of material fact: was the plan designed to award severance pay to every employee who is terminated without cause, without regard to later employment or was it designed, instead, to pay only employees who are terminated without cause, and do not continue to work for the company in another capacity or for a successor company?

Data Documents clearly met its burden of supporting its motion for summary judgment by introducing evidence that its policy was to award severance pay only to employees who were terminated as part of a reorganization or as a result of the closing of specific operations.[1] The company filed affidavits from management personnel stating that these were the only circumstances contemplated by its severance plan policy, because the purpose of the severance pay plan was to assist its employees during the period in which they were unemployed. Data Documents also produced evidence of past instances in which, after it closed an operation, it paid severance only to those workers who lost their jobs and not to those who transferred to another position within the company. Finally, its evidence points out that the severance pay given Dean Unumb upon his discharge was to stop if he were to accept employment with Advanced Card. All of this evidence supports the district court's characterization of Data Documents' severance plan.

Since Data Documents met its initial burden, plaintiffs were required to set forth specific facts showing that there was a genuine issue of material fact as to whether the plan entitled plaintiffs to severance pay when the Tiffin plant was sold. Fed.R. Civ.P. 56(e).

---

1. Plaintiffs do not contest on appeal the district court's finding that the unwritten policy can rise to the level of being a "plan" under ERISA, and have therefore waived the argument. For purposes of resolving this appeal, we will assume, without deciding the question, that such a policy can constitute a "plan" for ERISA purposes.

Plaintiffs' proffered evidence, however, failed to support any interpretation inconsistent with the one gleaned by the court from defendants' submissions, let alone one which would entitle them to severance pay. Their evidence consisted primarily of affidavits conveying the belief that the affiants would receive severance pay if they were terminated through no fault of their own and that the purpose of severance pay was to reward them for past service. Despite the sincerity of the affiants' subjective beliefs, such evidence is not relevant to a determination of the plan's actual content. And, significantly, no evidence was proffered indicating that Data Documents had ever done anything to cause the affiants to entertain those beliefs.

Plaintiffs did produce evidence that Data Documents had paid severance benefits to other employees who were not transferred to another division after a plant closing, without conditioning benefits on whether they had found other employment. However, this evidence is not inconsistent with Data Documents' explanation of its severance pay plan.

■ Plaintiffs also contend that the company should be estopped from claiming that they were not entitled to severance pay or, at least, that the terms of the plan should be interpreted strictly against the company because it failed to set out the plan in writing and provide its employees with summaries of the plan as required by ERISA. *See* 29 U.S.C. §§ 1021, 1022. While a court evaluating the conduct of a plan administrator under the *de novo* standard will take into account instances of this nature where an administrator fails to follow one of ERISA's procedural requirements, we are unwilling to say that such a failure should be held to constitute a per se violation of ERISA. Instead, the nature and consequences of a failure to follow required procedures should be evaluated under the totality of the circumstances. Here, our job is indeed complicated by the

administrator's failure to reduce the plan to writing, but there is no indication that Data Documents' failure in this regard was the product of bad faith, nor does it appear that Data Documents attempted to shirk its responsibilities under the terms of the plan as characterized by the district court. Accordingly, estoppel is too severe a sanction.[2]

The alternative suggested by plaintiffs is that this court adopt a rule providing that, when an employer has violated ERISA's mandated procedures by failing to put a plan in writing and distribute it to employees, the rule of construction concerning contract ambiguities should apply, with the result that evidence of the terms of the plan will be strictly construed against the employer. Adoption of such a rule would not further plaintiffs' cause since, under the circumstances of this case, evidence of the terms of the severance pay plan was uncontroverted. Because those terms unambiguously preclude plaintiffs' claims, there is no ambiguity to construe in their favor.

## IV.

Finally, plaintiffs contend that, even if the district court correctly granted summary judgment, the court abused its discretion in failing to award attorney's fees to plaintiffs because they prevailed on the issue of whether Data Documents' severance pay policy was an employee welfare benefit plan under ERISA. However, their success in obtaining that ruling from the district court does not amount to success on a " 'significant issue which achieves some of the benefits sought in bringing the suit.' " *See Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589–90 (9th Cir.1984) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). Furthermore, other than requesting attorney's fees in their complaint, plaintiffs did not pursue the claim before the

---

**2.** Plaintiffs do not contend that the sale of the plant and its subsequent failure constitute inequitable conduct by defendants. The plant operated for some time after being sold, and the sale was apparently an arm's length transaction.

We do not, therefore, reach the issue of whether conduct by the sellers of a plant that appears to be a means of tricking employees out of benefits will require compensation under ERISA.

district court. Consequently, their request for attorney's fees must be denied.

## V.

For the foregoing reasons, the judgment of the district court is affirmed.