Michael J. HEBEIN, Kenneth G. Alderton, Louis P. Cevigney, Richard L. Emanuelson, Walter J. Garceau, Wesley B. Heikkinen, Gerald L. Robbert, John W. Rosewall, Michael L. Starkey, Theresa A. Syrjala, and Lawrence F. Wilkins, Plaintiffs,

v.

IRECO, INC., a Delaware corporation, Defendant.

No. 2:92–CV–109.

United States District Court, W.D. Michigan, N.D.

May 7, 1993.

Glenn W. Smith, Bensinger, Cotant, Menkes & Aardema, PC, Marquette, MI, for plaintiffs.

Diane M. Soubly, Miller, Canfield, Paddock & Stone, Detroit, MI, Charles S. Mishkind, Miller, Canfield, Paddock & Stone, Grand Rapids, MI, for defendant.

## OPINION

QUIST, District Judge.

This is an ERISA action, brought by eleven (11) former employees against defendant IRECO, Inc. ("IRECO"). Plaintiffs allege that IRECO owes them severance pay. The parties have filed cross-motions for summary judgment.

### Background Information

Plaintiffs were all employees of IRECO at a plant in Marquette County, Michigan, at the time IRECO was succeeded by a joint venture, PEPIN–IRECO, Inc. ("PEPIN–IRECO"). On or about October 7, 1988, plaintiffs' employment with IRECO was terminated. All employees were presented with and required to sign termination statements. Plaintiffs were immediately employed by PE-PIN–IRECO, without experiencing a period of unemployment. They were not interviewed or required to fill out employment applications before they were rehired.

At the time of the transition, IRECO had a written severance pay policy which provided:

1.43 *Involuntary Termination*

1.1431 Granting Severance Pay

When a full-time employee is terminated as a result of a reduction in force, change in job requirement, departmental reorganization, or due to other factors beyond the control of the employee, severance pay will be awarded based on length of service. . . . Severance pay may not be awarded if the reduction in force is considered temporary (six-month period or less) or if the employee is on part-time or temporary status.

1.432 Denial of Severance Pay

Employees will not be awarded severance pay when terminated for the following reasons: 1) misconduct, disregard for the best interest of IRECO, committing an act which violates statutory laws, endangering safety and/or property of others or other cases which result in immediate termination; 2) employees terminated after receiving adequate warning and opportunity to take corrective action through the disciplinary steps outlined in section 5.55.

The severance pay plaintiffs are seeking, according to both parties' calculations, ranges from $480 to $6,240 per individual, with eight of the plaintiffs claiming $6,240. The amount of claimed severance pay totals $55,492.29 in aggregate.

In its motion for summary judgment, IRECO alleges that it informed plaintiffs prior to October 7, 1988, that they would not be receiving severance benefits if they retained employment with the joint venture. The deposition transcripts defendant cites do not, however, support this claim. The testimony shows lack of knowledge or the inability to remember when such information was transmitted.

Plaintiffs filed this motion three and a half years after the events of October 1988. IRECO argues that the claim is subject to a one year limitations period pursuant to state law or a three year limitation period under ERISA and, in either case, is untimely. Plaintiffs assert that their claim is timely because it is subject to a six year limitations period pursuant to state law.

Plaintiffs seek judgment on the grounds that the language of the severance pay provision unambiguously affords them that benefit because they were terminated due to factors outside their control and the provision does not include their situation within the exceptions to severance pay. IRECO claims that judgment should be granted in its favor because plaintiffs have failed to meet all of the criteria for severance pay. It maintains that the language and *intent* of its policy excludes severance pay in these circumstances.

Plaintiffs support this argument that they were terminated and are entitled to severance pay by alleging that when they were hired by PEPIN–IRECO, their benefits were significantly reduced. IRECO disputes this allegation and provides a chart comparing benefits under the IRECO and the IRECO–PEPIN plans. (IRECO Exhibit R) The comparison shows only a slight reduction in benefits under plaintiffs' new employer. IRECO, however, failed to include severance pay in the chart or to show that it is not available under the new employer's plan.

### Standard for Summary Judgment

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S: 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the nonmoving party. *Id.* This standard requires the nonmoving party to present more than a scintilla of evidence to defeat the motion. The summary judgment standard mirrors the standard for a directed verdict. The only difference between the two is procedural. Summary judgment is made based on documentary evidence before trial, and directed verdict

is made based on evidence submitted at trial. 477 U.S. at 250–51, 106 S.Ct. at 2511. A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate that there is a genuine issue of material fact for trial. *Id.* The Court must draw all inferences in a light most favorable to the non-moving party, but the Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### *Statute of Limitations*

■ ERISA provides a three-year statute of limitations for claims of breach of fiduciary duty but does not provide any limitations period for actions pursuant to 29 U.S.C. § 1132(a)(1)(B). IRECO maintains that the three-year limitation period should apply, making plaintiffs' claim time-barred. The instant action is, however, best categorized as a claim for benefits due under the terms of a plan pursuant to Section 1132. To characterize plaintiffs' action as a claim of breach of fiduciary duty places undue emphasis on a few of their allegations. Plaintiffs appropriately brought their claim under part 5 of ERISA and thus, the three-year limitations period for breach of fiduciary duty, 29 U.S.C. § 1113, which applies only to actions brought under part 4, is not applicable here. *See Nolan v. Aetna Life Ins. Co.,* 588 F.Supp. 1375, 1378 (E.D.Mich.1984).

■ In the absence of a federally mandated limitations period, this Court should apply the most analogous state law statute of limitations. *Meade v. Pension Appeals and Review Committee,* 966 F.2d 190, 194–95 (6th Cir.1992) (applying state breach of contracts limitation period to section 1132 claim). At issue then is whether to apply a one year limitation pursuant to M.C.L.A. § 408.481, as defendant suggests, or the six year limitation provided in M.C.L.A. § 600.5807(8) for breach of contract claims, which plaintiffs offer as most analogous. Defendant does not dispute that M.C.L.A. § 600.5807(8) could be applied, but maintains that Section 408.481, which addresses claims for violation of Michigan's Wages and Fringe Benefits Act, is more applicable. It provides:

> An employee who believes that his or her employer has violated this act may file a written complaint with the department [of labor] within 12 months after the alleged violation.

This section sets up an administrative remedy that is an alternative to court action at the election of the employees. *See Murphy v. Sears, Roebuck & Co.,* 190 Mich.App. 384, 387, 476 N.W.2d 639, 641 (1991) (word "may" is permissive; employee is not required to exhaust administrative remedy before instituting suit). The time period addressed in Section 408.481 is thus inapplicable here. It pertains only to an administrative process and imposes neither a prerequisite nor a limitation on court actions. The six year general limitation on contract actions, M.C.L.A. § 600.5807(8), is thus the applicable statute and plaintiffs' action is timely.

### *Eligibility For Severance Pay*

#### *De Novo Review*

■ As the Supreme Court provided in *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo*" review in cases such as this. In distinguishing *de novo* review from the "arbitrary and capricious" standard applied to employer interpretations of benefit policies prior to *Bruch,* the Sixth Circuit instructs: "*De novo* interpretation looks to the terms of the plan, not to either party's interpretation of those terms." *Adams v. Avondale Industries, Inc.,* 905 F.2d 943, 950 (6th Cir.1990), *cert. denied,* 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990).

*Assessment of the IRECO Policy*

 IRECO insists that under the terms of its severance policy, plaintiffs must establish three criteria: (1) that they were "involuntarily terminated; (2) the termination resulted from 'a reduction in force, change in job requirements, departmental reorganization, or due to other factors beyond the control of the employee;' *and* (3) the anticipated period of unemployment must *not* have been considered temporary (six month period or less)." Defendant IRECO's Brief in Support of its Motion for Summary Judgment at 13–14 (emphasis supplied in Brief).

Plaintiffs have met the first criteria, involuntary termination, by establishing that IRECO required them to go through the termination process and sign termination forms. IRECO does not deny that it required plaintiffs to go through a formal termination process but it wants the Court to consider this at most a "technical" "nonsubstantive" termination or to disregard it as not the type of termination contemplated or required by IRECO's policy. But when the termination is assessed under the terms of the policy, which expressly describes the types of terminations that would give rise to severance pay, a termination like that experienced by plaintiffs appears to be included.

IRECO's policy spells out what was contemplated, in the language quoted as the second criteria, by describing the types of termination that would give rise to severance pay. It includes as one of the alternatives a termination "due to other factors beyond the control of the employee." In this instance, plaintiffs' employment with IRECO was terminated due to a change in corporate ownership, which was a factor outside of their control. Thus both the first and second criteria, as defined by IRECO's policy, appear to be met.

IRECO insists that a third criteria must also be applied in this case—the requirement that the termination not be considered temporary (less than six months). According to IRECO, this requirement applies to termination under each of the circumstances outlined under the second criteria. The plain language of the policy, however, does not mention unemployment and limits the six-month restriction to only one of the listed circumstances—terminations for reduction in force. The sentence containing the six-month restriction, quoted in full, states: "Severance pay may not be awarded if the *reduction in force* is considered temporary (six-month period or less) or if the employee is on part-time or temporary status." (Emphasis added.) Reduction in force is listed elsewhere as one of several causes of termination in a disjunctive list that includes termination "due to other factors beyond the control of the employee." Nowhere in the plan is severance pay, in general, limited to instances where a terminated employee suffers a period of unemployment. Thus what IRECO characterizes as the third criteria does not apply in this instance.

IRECO's policy also includes a provision which denies severance pay under circumstances where an employee is terminated for cause. IRECO has not claimed that severance should be denied plaintiffs under these provisions. A straightforward reading of IRECO's policy thus supports plaintiffs' motion for summary judgment.

IRECO insists that judgment in favor of plaintiffs would give them a windfall and would be contrary to precedent, to the customary interpretation of provisions such as IRECO's, and to IRECO's intent in formulating its severance pay policy.

Plaintiffs disagree that they will be getting a windfall since, in their new employment, they have less benefits. They lost or had reduced their pensions, vacation time, two paid holidays per year, accumulated sick leave, the ability to accumulate sick leave, educational reimbursement, travel insurance, severance pay, and certain insurance benefits.

Plaintiffs also point to a recent Minnesota state court decision involving IRECO that interpreted the very provision at issue in this case and held in favor of plaintiff employees. *Konecny v. IRECO, Inc.,* No. 88–02858 (Minn. District Court, Feb. 2, 1990). The court granted severance pay to employees of an IRECO plant in Minnesota who were terminated by IRECO and immediately rehired by a successor company with no inter-

ruption in employment but with a decrease in benefits.

IRECO argues that Konecny should be distinguished from the instant action because, in contrast to plaintiffs in this case, the plaintiffs in Konecny were orally promised severance pay, were fired from their old positions and interviewed by the new owners before being restored to their positions, and were required to recommence their work at a new location. Plaintiff's Summary Judgment Brief at 20–21. None of these distinctions require a different result.

IRECO also maintains that, while the Konecny plaintiffs received substantially reduced wages and benefits from their new employer, plaintiffs in this case received comparable benefits and the same or better wages. The excerpts of plaintiffs' depositions included as IRECO exhibits reveal that one person got a promotion and raise when the ownership changed and that all the others were paid as they had been by IRECO. Review of the benefits comparison chart (Plaintiffs' Exhibit R) reveals, however, that plaintiffs benefits were somewhat reduced. Moreover, the chart fails to include the most significant reduction. Under the new owner the benefit package does not include severance pay. Thus, it does not appear that a distinction can be drawn on the facts of Konecny that would require a different outcome.

IRECO also argues that Konecny was wrongly decided in that the Minnesota court relied on the minority position set forth in Harris v. Pullman Standard, Inc., 809 F.2d 1495 (11th Cir.1987) and failed to consider the intent of IRECO in formulating the policy. The cases IRECO cites do not, however, support a decision in its favor. Most of the cases it cites were decided before Bruch and applied the "arbitrary and capricious" standard of review to employers' interpretation of their plans. See Adcock v. Firestone Tire and Rubber Co., 822 F.2d 623, 626 (6th Cir. 1987); Holland v. Burlington Industries, Inc., 772 F.2d 1140, 1145 (4th Cir.1985), aff'd, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986); Jung v. FMC Corp., 755 F.2d 708, 713 (9th Cir.1985); Sly v. P.R. Mallory & Co., Inc., 712 F.2d 1209, 1211 (7th Cir.1983).

Moreover, in Harris v. Pullman Standard, Inc., a case with policy language more similar to the policy at issue here than that of many of the other cases cited above, the court held that it was arbitrary and capricious for the employer to deny severance pay to employees who were employed by the new owner without an interruption in employment when the plan did not require an interruption in employment. 809 F.2d at 1498–99.

The Sixth Circuit denied severance benefits in a transfer of ownership case in Franklin v. Pitney Bowes, Inc., 919 F.2d 45 (6th Cir.1990), but the terms were significantly different from those at issue here. The Franklin case involved an oral severance pay policy which provided that " 'severance pay was distributed only to employees who lost their jobs through no fault of their own and who did not continue to work for the company in some other capacity, or, in the case of a sale ... did not retain their jobs with the successor company.' " Id. at 46–47. IRECO's policy contained no such description of how the policy would apply upon transfer.

The language of the IRECO policy is closer to that at issue in Ulmer v. Harsco Corp., 884 F.2d 98 (3rd Cir.1989), a post–Bruch case in which the Third Circuit held that severance pay was owed even though employees worked under the new owner with no interruption in employment. In both Ulmer and the instant case, the policies provide that severance pay will be granted to permanent employees who are terminated other than for cause, unless they fit within a specified exception. See id. at 99–100, 103–04.

IRECO attempts to distinguish itself from Ulmer by noting that the person who formulated Harsco's plan testified that he "never considered the question of severance pay in the context of a going concern sale," id. at 104, while IRECO's Director of Human Resources attested by affidavit that "it was never the intent of [IRECO] to pay severance benefits to employees such as plaintiffs in situations of this type." (IRECO's Exhibit N, ¶ 2) If that was IRECO's intent, it should have formulated its severance policy to expressly provide an exception to its payment of severance benefits when employees

retained their positions after termination due to a change in ownership.

The most current case IRECO cites in its support is *Allen v. Adage, Inc.*, 967 F.2d 695 (1st Cir.1992), in which the court held that employees who transferred employment to a new owner were not entitled to severance pay under the terms of the policy at issue. That policy afforded severance pay " '[i]n the event that an involuntary termination is caused by reduction-in-force.' " *Id.* at 697. The court held that, in the context of the employer's plan, the term "reduction in force" was ambiguous. It then looked to evidence of the intent of defendant and found that Adage had required loss of income, in the form of nonreceipt of unemployment benefits, as a precondition to severance pay in the past. *Id.* at 702. The court concluded that "reduction-in-force" was "intended to have an economic dimension, requiring loss of income or, at least, unemployment as a *sine qua non* for coverage." *Id.* at 703. In contrast, IRECO's severance pay policy is not vague or ambiguous. It can be applied in this case on the basis of its language alone and does not require examination of extrinsic evidence of intent. Moreover, IRECO has provided no evidence that it required a period of unemployment or nonreceipt of unemployment benefits before it awarded severance pay.

The case of *Lesman v. Ransburg Corp.*, 719 F.Supp. 619 (W.D.Mich.1989), *aff'd*, 911 F.2d 732 (6th Cir.1990), is also inapposite. In *Lesman*, the severance policy provided severance pay "when a permanent, full-time employee is laid off due to reduction in work force or the elimination of a specific position(s)." *Id.* at 621. The court held that termination due to the sale of the business was covered by neither of these alternative criteria and noted, "If the terms of the plan were different and provided severance pay generally upon 'unemployment,' or 'termination,' or 'layoff,' without specifying the particular conditions of 'reduction in work force' or 'elimination of a specific position' this analysis probably would be different." *Id.* In

the instant case, the terms were different than in *Lesman*, and did include more general language. As the Sixth Circuit noted in *Adams v. Avondale Industries*, "The interpretation of a severance plan is necessarily a highly fact-specific inquiry in which precedent will often provide little guidance." 905 F.2d at 950 n. 3. In this case, the language of the severance pay policy is clear and, by including termination "due to other factors beyond the control of the employee," it extends severance pay to employees in plaintiffs' circumstance.

### Retirees

IRECO maintains that, even if some of the plaintiffs are entitled to severance pay, two individuals, Kenneth G. Alderton and Louis P. Cevigney, should be precluded from receiving such pay because they took retirement rather than termination.[1] Plaintiffs respond that the retirement was coerced and is related to denial of severance benefits. This issue raises questions of fact that cannot be resolved on summary judgment.

### CONCLUSION

For the reasons stated above, plaintiffs' motion for summary judgment (Docket # 23) is granted, as to all plaintiffs except Kenneth G. Alderton and Louis P. Cevigney, and defendant's motion for summary judgment (Docket # 24) is denied. Judgment will be entered against defendant for the amount of severance pay, plus interest, due to all plaintiffs but Kenneth G. Alderton and Louis P. Cevigney. The case will proceed as to the remaining plaintiffs on the issue of whether they are precluded from collecting severance pay by their election of retirement. An Order consistent with this Opinion will be issued.

### ORDER

In accordance with the Opinion issued on this date,

**IT IS HEREBY ORDERED** that plaintiffs' Motion for Summary Judgment (docket

---

1. IRECO also maintains that one individual should not receive severance pay because he testified in deposition that he does not believe he

is entitled to it. The issue of whether he is entitled to severance pay is, however, a legal issue to which he was not qualified to testify.

entry #23) is **GRANTED** and that judgment is entered in favor of all plaintiffs except Kenneth G. Alderton and Louis P. Cevigney and against defendants for the amount of severance pay due plaintiffs, as set forth in defendant's answer to plaintiffs' Interrogatory No. 4, attached, plus interest.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (docket entry #24) is **DENIED.**

This case will proceed only on the claims of plaintiffs Kenneth G. Alderton and Louis P. Cevigney.

INTERROGATORY NO. 2:

State the position Tony Johnson occupied at IRECO, Inc., at or about the time that Mr. Johnson made the decision to deny Plaintiffs' severance pay.

ANSWER: The Company objects to the form of this interrogatory. Without waiving this objection, Tony Johnson was the Human Resources Director at IRECO, Inc. at the time it was determined that IRECO's severance pay policy was not applicable under the circumstances of this case.

INTERROGATORY NO. 3:

For all of the Plaintiffs, list the dollar amount of severance pay each received from the Defendant as a result of the October 7, 1988 termination.

ANSWER: The plaintiffs did not receive severance pay because they were not entitled to it under the circumstances of this case.

INTERROGATORY NO. 4:

Assuming Plaintiffs were entitled to severance pay, pursuant to IRECO's applicable policy earlier produced, and understanding that Defendant denies Plaintiffs are entitled to severance pay, show the calculations for each individual Plaintiff for their individual severance pay amounts. Include in this calculation, the length of service of each individual Plaintiff and applicable hourly wage.

ANSWER:

| NAME | HOURLY RATE 10/7/88 | LENGTH OF SERVICE 10/7/88 | HOURS OF SEVERANCE PAY | SEVERANCE PAY |
|---|---|---|---|---|
| Kenneth Alderton | $ 6.00 | 9 months | 80 hours | $ 480.00 |
| Louis Cevigney | $12.00 | 16 years | 520 hours | $6,240.00 |
| Richard Emanuelson | $12.00 | 14 years | 520 hours | $6,240.00 |
| Walter Garceau | $12.00 | 23 years | 520 hours | $6,240.00 |
| Michael Hebein | $12.00 | 12 years | 520 hours | $6,240.00 |
| Wesley Heikkinen | $12.00 | 13 years | 520 hours | $6,240.00 |
| Gerald Robbert | $12.00 | 12 years | 520 hours | $6,240.00 |
| John Rosewall | $12.00 | 24 years | 520 hours | $6,240.00 |
| Mike Starkey | $12.00 | 12 years | 520 hours | $6,240.00 |
| Theresa Syrjala | $17,500 yr | 7 years | 320 hours | $2,692.29 |
| Lawrence Wilkins | $12.00 | 4 years | 200 hours | $2,400.00 |

ANSWERS BY

/s/ Richard Shea
Richard Shea

Dated: 10/30/92

AS TO OBJECTIONS ONLY:
MILLER, CANFIELD, PADDOCK AND STONE
CHARLES S. MISHKIND (P–32346)
DIANE M. SOUBLY (P–32005)
MEG HACKETT CARRIER (P–34078)
By /s/ Charles S. Mishkind
Attorneys for Defendant
99 Monroe Avenue, N.W.
P.O. Box 329
Grand Rapids, MI 49503
Dated: November 2, 1992